# W. R. PERKINS *v.* MERCHANTS & FARMERS BANK.

[60 South. 131.]

1. CORPORATIONS. *Stock subscriptions. Defenses. Waiver.*

   A subscription contract obtained by fraudulent representations may cease to be voidable and may become absolutely binding by acts of ratification. Any act of the subscriber, inconsistent with an intention to disaffirm the contract, will constitute a ratification of the subscription and a waiver of the right to avoid it by reason of fraud, provided the subscriber knew of the fraud, at the time of such ratifying act.

2. SAME.

   A participating in the meetings of the company and voting shares by proxy would amount to a ratification under such circumstances.

3. CORPORATIONS. *Stock subscriptions. Defense to notes. Failure to incorporate.*

   Where a party subscribed for stock in a corporation and gave his notes therefor and participated by proxy in the meetings of the company, after full knowledge of any fraud which may have been practiced upon him in obtaining his subscription, he cannot defend a suit on his note on the ground that the incorporation of the company was not perfected in the state of the company's domicile, where the company actually engaged in business in that state.

APPEAL from the circuit court of Pontotoc county.

HON. GEO. J. LEFTWICH, Special Judge.

Suit by Merchants & Farmers Bank of Pontotoc for, use of J. A. Powell against W. R. Perkins. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Alexander & Alexander,* for appellant.

It was a glaring mistake to instruct the jury in the fifth instruction that Perkins was estopped if he acted as a stockholder of said company "just as if the stock had been issued and delivered to him." There is not one

particle of proof that he acted as a stockholder. When asked by the company for a power of attorney to represent him at a meeting, and when about the same time he learned that the company was about to go into the hands of a receiver, surely he had the right to appoint someone, whether it is called by proxy or power of attorney, to represent him in looking after his rights. There is not a particle of proof that Salmon, who got this proxy, ever voted it. He could not have voted the stock for the corporation was not chartered. In other words, the court, in the face of the admitted facts that this gang of adventurers never had been incorporated, allowed the jury to find against Perkins on the theory that he had acted as a stockholder. The rascals were caught up with and a receiver appointed before they could ever organize, or get a charter, and yet the holder of a note must be held to stand in exactly the shoes of an unincorporated concern and is to recover on the theory that Perkins had so acted as to make himself a stockholder in a corporation never organized. This is not a case for straining at technical rules of law. It is a case where the court, sitting as a court of equity and conscience, should set the emphatic seal of its condemnation on the whole scheme of fraud, and announce that no one connected with it, and no one who holds under it, can be allowed to profit by its fraud and cunning.

*Fountaine & Fountaine,* for appellee.

There was no error in the court instructing the jury as it did. Appellant could not have successfully defended the suit upon the note by the Great Southern Agency Company on the ground of fraud until he had rescinded, disaffirmed or repudiated the contract; nor can he defend the suit of Powell against him until he had done this if indeed he had any defense at all. Powell is protected by his *bona fides.*

"For where the subscriber has been guilty of negligence in informing himself of the actual facts, (2) where,

in consequence of his delay in repudiating the contract, innocent third parties, shareholders, or creditors have acquired rights which would be prejudiced by its rescission." 10 Cyc. 423, and authorities cited in note 86.

Again appellant appointed J. H. Salmon, his agent, or attorney in fact, to represent him at a meeting of the Great Southern Agency Company, which could have only been a meeting of the stockholders. The appointment of Salmon was made upon one of the company's blanks, and it makes no difference whether appellant was called upon to do this or not. It is contended that this amounted to nothing; that appellant had the right to appoint some one to look after his rights. He could certainly have no rights in the concern, except those springing from and growing out of this contract. The certificate of stock issued by the company and received by appellant, and still held by him, does not constitute the title to stock, which is created only by the registry of the holder's name in the corporate books with statement of the number of shares of which he is the owner, certificate being simply an evidence of that ownership, and constitutes him a stockholder. 2 Beach on Corporations, p. 972; Field on Corporations, p. 144, sec. 130; 7 Words & Phrases, p. 6662.

And the subscriber is chargeable with knowledge of the fact of the organization of the corporation, of the powers which it possesses with respect of the creating of a share capital, and the issuing of shares, and the control which it may have over its shares. 10 Cyc. 380 (2). And by doing this he has waived all right to and is estopped from setting up any defense to this suit. He cannot claim any rights, or benefits, under the contract and at the same time repudiate the contract.

REED, J., delivered the opinion of the court.

On August 26, 1909, appellant made and delivered his promissory note for six hundred dollars. The note was

payable on or before December 1, 1911, to Merchants' & Farmers' Bank of Pontotoc, with six per cent per annum interest from December 1, 1909, and with a reasonable attorney's fee expended in the collection thereof. Suit was filed by the Merchants' & Farmers' Bank of Pontotoc, for the use of J. A. Powell, against W. R. Perkins, for the recovery of the amount of the note, with interest and attorney's fees. Appellant contended that he should not be required to pay this note, because it was given in payment for his subscription to twenty shares of the capital stock of the Great Southern Agency Company, and that the subscription was procured by the fraudulent misrepresentation of A. D. Johnson, the stock salesman of the company. He also contended that the Merchants' & Farmers' Bank of Pontotoc was not in operation at the time.

It appears from the record that W. R. Perkins, the appellant, made application for the twenty shares of stock he purchased in the Great Southern Agency Company, whereby he agreed to pay the sum of thirty dollars per share. The application provides that the Agency Company should furnish a gold bond, a copy of which had been exhibited to the applicant, Perkins, providing that he should be repaid the amount of his stock, not later than twenty-five years after the date of the bond, and that upon such payment all interest in the shares of stock shall be ended, and the stock shall become the property of the company. It also provides that if the applicant fails to surrender the bond for redemption at maturity, or within twelve months thereafter, the Central Bank & Trust Company, of Memphis, Tenn., who appears to guarantee the bond, shall pay the value thereof to the Great Southern Agency Company. The applicant gives authority for the use of certain funds to be accumulated in the Trust Company for the organization of a legal reserve insurance company, the bond to be evidence of his interest therein. The concluding paragraph in the ap-

plication is as follows: "I agree that no conditions or representations, other than those set out in this application and said bond, shall be relied upon by me for any other purpose, and that, to be valid, all payments upon this application must be by check, draft, or money order, payable to the Great Southern Agency Company."

Appellant was given a receipt of even date with said note showing the payment for the twenty shares of stock. The receipt is signed by the secretary and treasurer of the Great Southern Agency Company, and states that it bears the same date and number as the stock certificate of the company issued to appellant. Under the same date with the note, the president and secretary of the company issued a certificate to appellant, stating that he is the owner of twenty shares of the capital stock of the Great Southern Agency Company fully paid and nonassessable, and that the stock is held in trust for the use and benefit of the owner, and bears the same date and number as the bond attached. And, under the same date the gold bond was issued by the president and secretary of the Agency Company, which appears to be in conformance with the terms of the application filed, and contains the statement that it is issued and held under and subject to the conditions of the application. It also states that the Great Southern Agency Company had deposited with the Central Bank & Trust Company the sufficient amount of cash securities to guarantee the payment of the bond at maturity, and that the bondholder is the owner of the twenty shares of stock in the Great Southern Agency Company, which is held in trust. The bond is accompanied by a certificate of the Central Bank & Trust Company, showing the receipt of such cash and securities, and expressing the terms under which it is held. Attached to the bond are coupons providing for the dividend to be due, but not stating the amount of such dividend. It is shown that all of these papers were received by appellant in due time.

On February 14, 1910, appellant, as stockholder in the Great Southern Agency Company, signed and delivered to J. H. Salmon a proxy, authorizing him to act for appellant at any meeting of the company. Some time in February, 1910, the Great Southern Agency Company went into the hands of a receiver. There is no proof in the record as to the assets or liabilities of the Agency Company. It is shown by the record that appellant received a letter from the receiver of the Great Southern Agency Company, under date of March 26, 1910, in reply to a letter of inquiry written by appellant on March 24, 1910, in which the receiver stated that there was no record of the company having had a note of appellant on account of subscription for stock; that the parties who subscribed for stock either paid cash for same or discounted their notes in banks to obtain money to pay for their stock.

We only deem it necessary in this case to consider the contention that the appellant is not liable for the amount of his note, because of the fraudulent misrepresentations made by Johnson, the stock salesman. A careful examination of the record fails to show the proof to sustain this contention. On the other hand, the review which we have made above of all of the executed papers in this case shows that the appellant got what he purchased.

It appears that the law in the case was properly and fairly presented by the trial court in the instructions given. Appellant claims that the court erred in modifying certain instructions for the defendant by the use of the following language at the end of the instruction: "Provided he did not afterwards, by his conduct, waive his right in this regard." We think the trial court was correct in making this modification. It was proper for the jury to consider the subsequent action of appellant, as, for instance, participating in the meetings of the company, by proxy or otherwise, with the view of ascertaining whether he had ratified the purchase, or whether he was

.by his actions estopped from repudiating the transaction .of the purchase of the stock. It is stated in Cook on Corporations, par. 160, that: "A subscription contract obtained by fraudulent representations may cease to be voidable and may become absolutely binding by acts of ratification. Any·act of the subscriber, inconsistent with an intention to disaffirm the contract, will constitute a ratification of the subscription, and a waiver of the right to avoid it by reason of fraud, provided the subscriber knew of the fraud at the time of such ratifying act."

It has been held that participating in the meetings of the company and voting shares, by proxy, would amount to a ratification, and in discussing this subject in 10 Cyc. .p. 425, it is stated: "A contract to take shares, induced by fraudulent misrepresentations or concealments, is not only valid until rescinded, but it may become absolutely binding by acts of ratification. And here it may be stated generally that if a person who has been thus entrapped into the purchase of shares, after discovering the fraud, acts in a manner inconsistent with an intention to disaffirm the contract, this will preclude him from disaffirming it afterwards." The law holds a subscriber to shares in a corporation to diligence in inquiring whether there are misrepresentations inducing him to subscribe which will entitle him to a rescission, and it is stated in 10 Cyc. p. 439, that "he must claim a rescission within the shortest limit of time which is fairly possible in the particular case. He will not be permitted to play fast and loose, and to remain with the company if it is successful, and leave it if it fails." It can hardly be said that appellant used this necessary diligence, and that he with sufficient promptness, and within proper time, claimed a rescission of his contract.

The Merchants' & Farmers' Bank, a state bank, was changed and organized into the First National Bank, and continued business at Pontotoc as such. The note

sued on was written on an ordinary form used in this banking business. It was held by J. A. Powell, who, it is shown, is the *bona fide* owner. In view of our conclusions that fraudulent misrepresentations have not been established in this case, it is not material whether the note is a bearer note; nor can we see the materiality of the contention, made by appellant in the trial of the case, that the Great Southern Agency Company was not incorporated under the laws of the state of Tennessee. It certainly appears from the record, as shown in the foregoing statement of the case, that the company was engaged in business in that state, and its failure to incorporate under the laws of Tennessee will not avail appellant in the present case.

We do not find any reversible error in the trial of this case and its presentation to the jury, and we will not, therefore, disturb the jury's verdict.

*Affirmed.*